**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 07-371-JBC**

**THE BURLINGTON INSURANCE**
**COMPANY,**                                                                   **PLAINTIFF,**

**V.**                              <u>**MEMORANDUM OPINION AND ORDER**</u>

**PROGRESSIVE NORTHERN**
**INSURANCE COMPANY,**                                             **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court upon the plaintiff's motion for summary judgment (DE 8) and the defendant's cross-motion for summary judgment (DE 10). The court, having reviewed the record and being sufficiently advised, will grant the plaintiff's motion and deny the defendant's motion.

**I.      Background**

The plaintiff, Burlington Insurance Company ("Burlington"), and the defendant, Progressive Northern Insurance Company ("Progressive") have a mutual insured, Best Choice Mobile Home Movers ("Best Choice").  At all times relevant to this action, the plaintiff had a commercial general liability policy with Best Choice, and the defendant had a commercial auto policy with Best Choice.  The plaintiff alleges that the defendant wrongfully refused to defend and indemnify Best Choice in a lawsuit filed against Best Choice by Harvey Clark.

The parties do not dispute the facts of the underlying lawsuit.  On July 29, 2005, Mr. Clark filed a complaint in the Montgomery (Kentucky) Circuit Court against Best Choice, alleging that Best Choice was negligent in failing to control traffic while moving a mobile home and that as a result of this negligence, he was injured.

The evidence developed through discovery and presented at trial established the following facts. At the time of the accident that resulted in Mr. Clark's injuries, Best Choice was in the process of transporting a mobile home on a road in Montgomery County, Kentucky.  While it was turning the home off of the highway, traffic backed up, resulting in a long line of vehicles.  Mr. Clark was traveling on the highway when he was forced to stop suddenly, due to this backed-up traffic.  Mr. Clark was then hit from behind by a coal truck, and Mr. Clark sustained injuries from that impact.

In his complaint against Best Choice, Mr. Clark alleged that Best Choice was negligent due to its failure, while transporting a mobile home on the highway, to provide flag men and warning signs in a position to alert oncoming drivers that the road was blocked.  Specifically, the trial court instructed the jury that Best Choice had a duty in moving the mobile home to exercise ordinary care for the safety of other persons using the roadway and that this duty included either one or both of the following duties: (1) a duty to maintain a lookout for other vehicles upon the roadway and (2) a duty to exercise ordinary care generally to avoid collision with

2

other persons and vehicles on the highway, including the vehicle of Mr. Clark.  The jury found that Best Choice had failed to comply with one or more of these duties and was liable to Mr. Clark for $49,499.40 in damages.[1]

The plaintiff provided a defense to Best Choice and ultimately paid the judgment on behalf of Best Choice.  The plaintiff originally filed this case in Montgomery Circuit Court, alleging that Progressive was obligated under its policy with Best Choice to defend and indemnify Best Choice but wrongfully refused to do so.  The defendant removed to this court, asserting that jurisdiction existed pursuant to 28 U.S.C. §1332(a)(1).

The parties do not dispute the existence of the two insurance policy agreements or the language in the agreements.  The parties do not dispute that Progressive's policy covered four Best Choice vehicles: two pick-up trucks, a tractor, and a trailer.  Nor do the parties dispute that on the day of the accident, Best Choice was employing these four vehicles to move a mobile home.

The parties disagree as to whether the Progressive's policy covers Best Choice's liability for Mr. Clark's injuries.  At issue is the Progressive policy provision promising coverage of bodily injury or property damage caused by an accident that "arises out of the ownership, maintenance or use of [the] insured auto."  DE 8,

---

[1]The jury also unanimously found that Mr. Clark and the driver of the coal truck were negligent.  DE 8, exhibit 2.  Neither party to the present case makes any argument that the negligence of the two third-party drivers affects the applicability of the insurance policies, and so the court will not address this aspect of the underlying case.

exhibit 3a, Progressive's policy, p. 5.  Specifically, the parties dispute whether the accident that caused the injuries to Mr. Clark was an accident that "arose from the use" of Best Choice's insured autos.  Burlington further asserts that it had no responsibility to indemnify or defend Best Choice due to the provision in its policy excluding coverage for bodily injury or property damage "arising out of the . . . use of . . .any 'auto.'" DE 8, exhibit 5, pp. 26-28.

## II.    Analysis

### A.    Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case.  *Id*. at 324-25.  To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e).   The court must view all of the evidence in the light most favorable to the party opposing summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

This is a diversity action, and so Kentucky law governs the court's interpretation of the insurance policies. *State Farm Mut. Auto Ins. Co. v. Kentucky School Bd Ins. Trust*, 851 F.Supp. 835 (E.D. Ky., 1994)(citing *Eades v. Union Railway*, 396 F.2d 798, 799 (6th Cir. 1968)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Preferred Capital Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303 (6th Cir. 2007).

**B.    The Accident Arose from Best Choice's Use of Its Covered Autos**

The interpretation of an insurance policy provision is a question of law.  *See Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002).  In the absence of ambiguity, a court must interpret terms in an insurance policy according to their plain and ordinary meaning.  *Edwards v. Carlisle*, 179 S.W. 3d 257, 259 (Ky. Ct. App. 2004) (citing *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W. 3d 129, 131 (Ky. 1999)).  Neither party asserts there is any ambiguity in the policy.

Progressive's policy covers Best Choice's liability for accidents "arising from the . . . use of [the] insured auto."  At issue is the interpretation and application of the phrase "arising out of the use of the insured auto."  As there is no genuine dispute as to a material fact, summary judgment is appropriate.  The parties dispute whether, as a matter of law, the accident arose from Best Choice's use of its

5

insured autos.[2]  Specifically, the defendant argues that it did not so arise because the accident did not involve a Best Choice vehicle and because the negligence of which Best Choice was found guilty did not involve its vehicles.

The defendant argues that because Best Choice's failure to provide adequate warning of the blocked road was not, in and of itself, a "use" of an insured vehicle and because it was this failure that the jury found to be a proximate cause of the accident, Mr. Clark's injuries did not arise from Best Choice's use of its insured vehicles.  However, the relevant question is not whether negligent use of a vehicle by Best Choice caused the accident.  Progressive does not cover Best Choice only for negligent use of its vehicles, but rather for any accident that arises from use of the insured vehicles.  "The Sixth Circuit has determined that under Kentucky law [the words] 'arising out of use of' in an automobile insurance policy are 'broad, general, comprehensive terms meaning 'originating from,' 'having origin in,' 'growing out of,' or 'flowing from.''"  *State Farm Mut. Auto. Ins. Co. v. Kentucky School Bd. Ins. Trust*, 851 F. Supp. 835, 837 (E.D. Ky. 1994) (quoting *Ins. Co. of North America v. Royal Indemnity*, 429 F.2d 1014, 1017 (6th Cir. 1970)).

---

[2]The defendant contends that the insured vehicles were not in "use" at the time of the accident because no Best Choice vehicle was directly involved in the accident, neither of the two involved vehicles was under the protection of Best Choice's escort vehicles, and Mr. Clark did not see a Best Choice vehicle. However, the defendant actually does not dispute that at the time of the accident, Best Choice was utilizing the four insured vehicles to transport a mobile home and had, in the course of this use, blocked the road.  Thus, Progressive's argument is more precisely characterized as an argument for why Mr. Clark's injuries did not arise from Best Choice's use of the vehicles, and the court will treat it as such.

6

Therefore, the pertinent question is whether the accident involving Mr. Clark originated from, had its origin in, grew out of, or flowed from Best Choice's use of its vehicles.

The law does not require that the use itself be the proximate cause of the accident; however, "the causal connection must be more than incidental." *Id.* (citing *Kentucky Farm Bureau Mut. Ins. Co. v. Hall*, 807 S.W.2d 954 (Ky. Ct. App. 1991)). A sufficient causal relationship between the use and the injury exists when the injury could be "considered reasonably within the contemplation of the parties to the automobile insurance contracts involved." *Hartford Ins. Cos. of Amer. v. Kentucky School Bds. Ins. Trust*, 17 S.W.3d 525, 528 (Ky. Ct. App. 1999) (citing *U.S. Fidelity & Guaranty Co. v. Western Fire Ins. Co.*, 450 S.W.2d 491 (Ky. 1970)). "A party satisfies this requirement by showing that the injury is reasonably identifiable with the normal use or maintenance of a vehicle and is reasonably foreseeable." *Id.* (citing *Hall*, 807 S.W.2d at 955). When the vehicle is merely the location of the accident or the accident is otherwise wholly dissociated and independent from the use of the vehicle, the causal connection is incidental. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Rains*, 715 S.W.2d 232, 234 (Ky.1986) (finding no causal connection between injury and vehicle use where driver was attacked upon his return to his parked car); *U.S. Fidelity and Guaranty Co.*, 450 S.W. 2d 491 (finding no "use" of car where accident at issue was the discharge of

7

a firearm inside of the car and parties had stipulated that the movement or
operation of the car was not implicated in the accident).

Here, Best Choice's actual use of its autos was not the proximate cause of
the accident. The causal connection between the accident involving Mr. Clark and
Best Choice's use of its vehicles was more than incidental, however, and it was
reasonably within the contemplation of the parties. That Best Choice, in the
business of moving mobile homes, might create traffic problems on the roadways
was foreseeable. The plaintiff asserts, and the defendant does not dispute, that
Best Choice normally used the four vehicles to move mobile homes. One of the
vehicles was a trailer and another was a tow truck marked "oversize load." DE 8,
exhibit 4, Insured Tow Vehicle. One could foresee that such vehicles would be
used to haul mobile homes and, indeed, Progressive does not argue that the
accident was unforeseeable.

That some other negligent act was the proximate cause of the accident has
no bearing on whether the accident arose out of the use of a vehicle: it does not
transform the accident into an event wholly dissociated or independent from the
use of the vehicle. Best Choice's breach of its duty to have warning signs and flag
men clearly did not exist independent of its use of its vehicles; without the use of
the vehicles, there would have been no need for any warning signs or flag men.
*See Tomlinson v. Bituminous Casualty Corp.*, 117 F.3d 1421, 1997 WL 397248,
No. 96-5944, at *2 (6th Cir. 1996 July 10, 1997) (unpublished). Thus, the bodily

8

injuries and property damage sustained in the collision arose out of the use of the Best Choice vehicles, even if they were more directly caused by Best Choice's negligent failure to warn. *See Stevens v. Fireman's Fund Ins. Co.*, 375 F.3d 464 (6th Cir. 2004) (finding company's negligence in dispatching driver who had exceeded allowable hours was "inextricably intertwined" with use of vehicle and thus accident arose out of motor vehicle use); *Tomlinson*, at *2 ("The existence of possible regulatory negligence [such as failure to comply with requirements to post warning signs or flagmen] does not eliminate the fact that the injury arose 'out of the use of an automobile.'"); *see also Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co.*, 486 F.3d 727 (1st Cir. 2007) (finding accident arose out of the use of insured vehicle where collision between two third-party vehicles happened when their drivers forced to come to a stop because insured truck blocking road and police officer was directing traffic).

In summary, Mr. Clark's injuries arose from Best Choice's use of its four insured vehicles because there was a sufficient causal connection between the accident in which Mr. Clark sustained injuries and the use of the vehicles.  All four vehicles were being used by Best Choice to move the mobile home.  While these vehicles were in the process of turning the home off the highway, traffic backed up and the accident at issue occurred.  The accident, therefore, flowed from Best Choice's use of the three vehicles.  That such an accident might occur, with

accompanying injuries and property damage, was within the contemplation of Progressive and Best Choice.

## C.    Burlington's Exclusions Clause Applies

Burlington's policy contains a general exclusion for claims arising out of the use of an auto.  The clause provides that Burlington's insurance does not cover bodily injury or property damage "arising out of the . . . use . . . of any . . . 'auto.'" DE 8, exhibit 5, Burlington policy, p. 26-28.  The court must determine whether this exclusions clause results in Burlington's having no liability for Mr. Clark's injuries.  To make this determination, the court must resolve whether the causal connection between the injuries and the use of the vehicles required to trigger the application of this exclusion clause is the same as the causal connection required to establish coverage under Progressive's policy.

"[E]xclusions in insurance policies are to be narrowly construed to effectuate insurance coverage."  *Hugenberg v. West Amer. Ins. Co./Ohio Cas. Group*, 249 S.W. 3d 174, 186 (Ky. Ct. App. 2006) (citing *Eyler v. Nationwide Mutual Fire Ins. Co.*, 824 S.W. 2d 855, 859 (Ky. 1992)).  However, "[r]easonable conditions, restrictions, and limitations on insurance coverage are not deemed *per se* to be contrary to public policy." *Id.* (quoting *Snow v. West Amer. Ins. Co.*, 161 S.W.3d 338, 341 (Ky. Ct. App. 2004)).  Although an exclusions clause should be construed narrowly, it still must be interpreted according to the plain meaning of

10

the language used in the provision.  *See West Amer. Ins. Co. v. Embry*, No. 04-CV-47, 2005 WL 1026185, at *3 (W.D. Ky. April 25, 2005) ("[T]hough Kentucky courts do strictly construe exclusionary provisions against the insurer, they would not do so in a way to 'overcome plain, clear language resulting in a strained or forced construction.'"); *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (citing *St. Paul Fire & Marine Ins. V. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994))("[R]ule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the . . . language in the contract.").

Thus, "Kentucky courts would feel comfortable requiring only some causal relation or connection between the claim and the underlying event" in order for an exclusions clause to apply.  *Embry*, at *3.[3]  In interpreting the phrase "arising out

---

[3]The *Embry* court noted that the Kentucky Court of Appeals, in an unpublished split decision, had held that the causal connection required in order to trigger the exclusionary clause is not the same broad causal connection that is sufficient to create coverage under an automobile policy.  *See id.,* at *4-6 (discussing *Kentucky School Bds. Ins. Trust v. Bd. of Education of Woodford County, Kentucky*, 2003 WL 22520018).  The *Embry* court ultimately rejected that court's holding, as it was an unpublished decision and, per Kentucky rules, not precedent and because "to adopt the reasoning of this unpublished opinion would . . . strain the clear language of the policy at issue." *Id.* at *5.  Since the *Embry* court issued its opinion, the Kentucky Court of Appeals has issued a published opinion in which it interprets the "arising out of" language in an exclusions clause. *See Hugenberg*, 249 S.W.3d 174.  Nothing in that opinion contradicts the *Embry* court's reasoning.  Although *Hugenberg* does feature a tight causal connection between auto use and injuries, the court does not suggest that such a tight

of" in an exclusionary clause, Kentucky courts have cited the same broad definition used to interpret the phrase to determine liability. *See, e.g.*, *Hugenberg*, 249 S.W. at 186 (quoting *Ins. Co. of North Amer. v. Royal Indemnity Co.*, 429 F.2d 1014, 1017-18 (6th Cir. 1970)).  As discussed above, the causal connection between the injuries and Best Choice's use of its insured vehicles is sufficient to require Progressive to provide coverage for Best Choice's liability.  It is therefore also sufficient to trigger Burlington's policy's exclusions clause.

### D.    Progressive Northern had a duty to defend Best Choice

Progressive breached its duty to defend Best Choice.  "[E]ven if an insurance company denies coverage based on the mistaken belief that it is justified in doing so, the company may still breach its contract with the insured." *Kentucky Farm Bureau Mutual Ins. Co. v. Jason Blevins*, — S.W.3d. —, 2008 WL 4530712 (Ky. Ct. App. 2008) (citing *Eskridge v. Educator & Executive Insurers, Inc.,* 677 S.W.2d 887, 889 (Ky.1984)).

"If the contract to defend is breached . . . the party aggrieved by the breach is entitled to recover all damages naturally flowing from the breach." *Eskridge*, 677 S.W.2d at 889 (Ky. 1984).  Upon this court's finding that Progressive is liable for the indemnification of Best Choice, equity requires that Progressive Northern fully

---

connection is required for an exclusions clause to apply.  *Hugenberg*, 249 S.W.3d at 186-88 (noting that the phrase "arising out of" has been construed "expansively" and finding causal connection between parents' negligent supervision and auto accident sufficient to exclude coverage by homeowner's insurance policy).

reimburse Burlington for its expenses in defending Best Choice.  Burlington asserts, and Progressive does not deny, that the total amount requested by Burlington as reimbursement for Best Choice's liability and defense expenses is less than Progressive's total potential liability under its contract with Best Choice. Progressive is therefore liable to Burlington for the entire amount.

## III.    Conclusion

Accordingly, **IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 8) is **GRANTED** and the defendant's motion for summary judgment (DE 10) is **DENIED**.

**IT IS FURTHER ORDERED** that within thirty (30) days of the entry and issuance of this order, the plaintiff shall file a motion for costs or parties shall advise the court that the matter is resolved.

Signed on  December 11, 2008

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

13